1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11    MICHAEL VALENTINE, *et. al.*              Case No.  1:25-cv-00798-KES-HBK

12             Plaintiffs,                       FINDINGS AND RECOMMENDATION TO
                                                 DENY APPLICATIONS TO PROCEED *IN*
13        v.                                     *FORMA PAUPERIS* WITHOUT PREJUDICE
                                                 DENY PLAINTIFFS' MOTION FOR
14    GRANVILLE REALTY, INC, *et. al.*           TEMPORARY RESTRAINING ORDER[1]

15             Defendants.                       (Doc. Nos.  2, 3, 4)

16                                               FOURTEEN DAY OBJECTION PERIOD

17

18          Pending before the Court are Plaintiffs' applications to proceed *in forma pauperis* ("IFP")

19    under 28 U.S.C. § 1915 (Doc. Nos. 2, 3) and Plaintiffs' motion for a temporary restraining order

20    (Doc. No. 4, "Motion").  Plaintiffs' complaint (Doc. No. 1), applications to proceed IFP, and

21    Motion were filed on July 1, 2025.  For the reasons stated below, the undersigned recommends

22    that Plaintiffs' applications to proceed IFP and Motion be denied.

23        **I.  IFP**

24            **A. Legal Standard**

25          All parties instituting any civil action, suit, or proceeding in a district court of the United

26

27    _____

      [1] The undersigned submits these factual findings and recommendations to District Court pursuant to 28
28    U.S.C. § 636(b)(1)(B) and Local Rule 302 (E.D. Cal. 2025).  The undersigned was referred to the pending
      motion for a temporary restraining "and/or other appropriate action." (Doc. No. 5).

States, except an application for writ of habeas corpus, must pay a filing fee of $405.00.  *See* 28 U.S.C. § 1914(a).  An action may proceed despite a plaintiff's failure to prepay the entire fee only if he is granted leave to proceed IFP pursuant to 28 U.S.C. § 1915(a).  *See Andrews v. Cervantes*, 493 F.3d 1047, 1051 (9th Cir. 2007); *Rodriguez v. Cook*, 169 F.3d 1176, 1177 (9th Cir. 1999).

Under 28 U.S.C. § 1915(a)(1), a plaintiff may proceed without prepayment of fees if they submit an affidavit demonstrating that they are unable to pay court costs while still affording the necessities of life.  The affidavit must state facts with particularity, definiteness, and certainty.  *See Escobedo v. Applebees*, 787 F.3d 1226, 1234 (9th Cir. 2015). While a litigant need not be destitute, they must show genuine financial hardship. *See Adkins v. E.I. DuPont de Nemours & Co.*, 335 U.S. 331, 339–40 (1948).

**B. Plaintiff Michael Valentine**

In his application, Plaintiff Valentine declares a monthly income of $4,044.91, with no deductions for taxes or benefits.  (Doc. No. 2 at 1).  He reports less than $50 in cash or bank accounts, but owns a 2018 Toyota RAV4 valued at approximately $18,000.  (*Id*. at 2).  From what the Court can decipher, Plaintiff Valentine's stated monthly expenses include $1,375 in rent and $800 in credit card and loan payments, with additional liabilities totaling approximately $7,500 per month.  (*Id*.).  Despite these obligations, Plaintiff's acknowledged gross annual income exceeds $48,000.  Additionally, Plaintiff checks the box "yes" to additionally receiving income from "Rent payments, interests, or dividends," "Disability, or worker's compensation payments," and "Any other sources" but fails to respond to the question directing an applicant to describe each source and amount of funding.  (*See Id*. at 1, ¶ 3).  Thus, Plaintiff Valentine has not completed the application in its entirety so that the Court can accurately determine Plaintiff Valentine's complete financial assets.

The nonetheless Court notes that Plaintiff Valentine and co-Plaintiff Hubbard jointly filed this action and reside together.  (Doc. No. 4 at 13).  Accordingly, the Court considers the applicable poverty threshold for a two-person household.  According to the U.S. Department of Health and Human Services, the 2025 federal poverty guideline for a two-person household in the contiguous United States is $21,150 annually. *See* 2025 HHS Poverty Guidelines,

1    https://aspe.hhs.gov/poverty-guidelines (last visited July 3, 2025).  Plaintiff's income alone more

2    than doubles that threshold.

3         Courts have consistently held that IFP status should not be granted where an applicant can

4    pay the filing fee with acceptable sacrifice to other expenses. *See Alvarez v. Berryhill*, 2018 WL

5    6265021, at *1 (S.D. Cal. Oct. 1, 2018). Plaintiff's affidavit does not demonstrate that paying the

6    $405 filing fee would deprive him of life's necessities, nor does it establish indigency with the

7    requisite particularity and certainty. *See Escobedo*, 787 F.3d at 1234.

8                          **C. Plaintiff Amanda Hubbard**

9         In her application, Plaintiff Hubbard declares a gross monthly income of $3,084.80 and a

10   take-home pay of $2,523.64.  (Doc. No. 3 at 1).  She reports no cash on hand, no bank account

11   balances, and no significant assets.  (*Id.* at 2).  Her listed monthly expenses include $600 in credit

12   card payments, $200 for electricity, $35 for a phone bill, and $200 for food.  (*Id.*).  She also

13   reports $8,000 in credit card debt and a $22,000 student loan obligation. (*Id.*).  Plaintiff does not

14   list any dependents.  Plaintiff Hubbard also checks the box "yes" to additionally receiving income

15   from "Business, profession, or other self-employment" but fails to respond to the question

16   directing an applicant to describe each source and amount of funding.  (*See Id.* at 3, ¶ 3).  Thus,

17   Plaintiff Hubbard has not completed the application in its entirety so that the Court can accurately

18   determine Plaintiff Hubbard's complete financial assets.

19        Although Plaintiff Hubbard's financial obligations are not insignificant, her gross annual

20   income exceeds $36,000. The Court notes that Plaintiff Hubbard and co-Plaintiff Valentine

21   jointly filed this action and reside together.  (Doc. No. 4 at 13).  Accordingly, the Court considers

22   the applicable poverty threshold for a two-person household.  According to the U.S. Department

23   of Health and Human Services, the 2025 federal poverty guideline for a two-person household in

24   the contiguous United States is $21,150 annually. *See* 2025 HHS Poverty Guidelines.  Plaintiff's

25   income alone exceeds that threshold by more than 70 percent, and when considered in

26   conjunction with her co-Plaintiff's income, the household's combined earnings are well above the

27   poverty line.

28        Accordingly, the Court finds that Plaintiffs have not met the standard for proceeding IFP

3

1  under 28 U.S.C. § 1915. Consequently, the undersigned recommends that Plaintiffs be denied IFP

2  status and directed to pay the $405 filing fee or in the alternative be directed to complete the long-

3  form IFP application.

4  **II.  TRO**

5  **A. Plaintiffs' Motion**

6      Plaintiffs Valentine and Hubbard bring this Motion against Granville Realty, Inc.;

7  Granville Property Management, Inc.; Granville Homes, Inc.; Grass Valley Investments, LLC;

8  Jeffrey Allen Russell; Darius Assemi; Adriana Rivera; Melissa D'Ambrosi; and Does 1 through

9  100.  (Doc. No. 4 at 1).  Plaintiffs allege a pattern of racketeering, housing fraud, and disability

10  discrimination arising from their tenancy at 1371 N. Roosevelt Avenue in Fresno, California. (*Id*.

11  at 2).

12      Valentine, a permanently disabled U.S. Army veteran, has resided at the subject property

13  since October 15, 2019.  (*Id*.). On July 9, 2019, the Department of Veterans Affairs prescribed an

14  emotional support animal ("ESA") as medically necessary equipment to mitigate Valentine's

15  disabilities. (*Id*. at 2–3). Plaintiffs allege that the property was unlawfully rented without a

16  Certificate of Occupancy, in violation of California Health and Safety Code § 17920.3, thereby

17  rendering the tenancy void *ab initio*.  (*Id*. at 3).

18      On April 8, 2025, Valentine's ESA was diagnosed with terminal kidney failure, and

19  Defendants were informed of the crisis the following day. (*Id*. at 4). Fourteen days later, on April

20  23, 2025, Defendants issued a notice of sale initiating eviction proceedings. (*Id*.).  Plaintiffs

21  contend that the timing of the eviction demonstrates retaliatory intent and disability-based

22  discrimination in violation of the Fair Housing Act, 42 U.S.C. § 3604.  (*Id*. at 6).

23      On June 2, 2025, Defendant Rivera allegedly admitted that the property could not be

24  legally sold without a Certificate of Occupancy, confirming Defendants' knowledge of the

25  property's unlawful status.  (*Id*. at 3).  Plaintiffs further allege that Defendants fabricated rental

26  ledgers on June 8, 2025, after receiving a litigation hold notice on May 30, 2025—the same day

27  Valentine's ESA was euthanized.  (*Id*. at 4).

28      Plaintiffs assert that Defendants operate a criminal enterprise through a network of 49

shell entities registered to Defendant Russell and controlled by members of the Assemi family (*Id*. at 4–6). They allege at least 67 predicate acts of wire fraud and obstruction of justice, including the use of interstate ACH/EFT rent collection and the transmission of falsified documents. (*Id*. at 2, 28). Plaintiffs cite corroborating evidence from a separate RICO lawsuit filed by a family insider, Kevin Assemi, and regulatory sanctions issued against Russell and Assemi by FINRA and the California Department of Real Estate. (*Id*. at 3–4).

The Motion predominantly seeks emergency injunctive relief to halt a scheduled eviction on July 7, 2025, and also requests that the Court freeze corporate and personal assets, compel emergency repairs, and preserve evidence. (*Id*. at 2, 5, 9–11). Plaintiffs assert claims under the Fair Housing Act, the Civil RICO statute, and California state law, including retaliatory eviction. (*Id*. at 4–6).

**B. Legal Standard**

Federal Rule of Civil Procedure 65 governs injunctions and restraining orders, and requires that a motion for a temporary restraining order include "specific facts in an affidavit or a verified complaint [that] clearly show that immediate, and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition," as well as written certification from the movant's attorney stating "any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b). This court's Local Rules also set forth certain procedural mandates for a TRO to issue, including that the movant provide the following documents: (1) a complaint; (2) a motion for TRO; (3) a brief on the relevant legal issues; (4) an affidavit to support the existence of irreparable harm; (5) an affidavit detailing the notice or efforts undertaken or showing good cause why notice should not be given; (6) a proposed TRO and provision for bond; and (7) a proposed order with blank for fixing time and date for a hearing. Local Rule 231(c) (E.D. Cal. 2025).

Temporary restraining orders are governed by the same standard applicable to preliminary injunctions, with the exception that preliminary injunctions require notice to the adverse party. *See Cal. Indep. Sys. Operator Corp. v. Reliant Energy Servs., Inc.,* 181 F.Supp.2d 1111, 1126 (E.D. Ca. 2001); *see also* Fed. R. Civ. P. 65(a). Local Rule 231, however, requires notice for

1    temporary restraining orders as well, "[e]xcept in the most extraordinary of circumstances," and

2    the court considers whether the applicant could have sought relief by motion for preliminary

3    injunction at an earlier date.  Local Rule 231 (a)-(b) (E.D. Ca. 2019).  A temporary restraining

4    order "should be restricted to serving [its] underlying purpose of preserving the status quo and

5    preventing irreparable harm just so long as is necessary to hold a hearing, and no longer."

6    *Granny Goose Foods, Inc. v. Bhd. of Teamsters & Auto Truck Drivers Local No. 70*, 415 U.S.

7    423, 439 (1974).

8         A temporary restraining order is "an extraordinary remedy" and may be issued only if

9    plaintiff establishes: (1) likelihood of success on the merits; (2) likelihood of irreparable harm in

10   the absence of preliminary relief; (3) that the balance of equities tips in his/her favor; (4) that an

11   injunction is in the public interest.  *Winter v. Nat. Res. Def. Council, Inc*., 555 U.S. 7, 20 (2008).

12   Plaintiff bears the burden of clearly satisfying all four prongs.  *Alliance for the Wild Rockies v.*

13   *Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).  A TRO will not issue if plaintiff merely shows

14   irreparable harm is possible – a showing of likelihood is required.  *Id.* at 1131.

15        The injunctive relief an applicant requests must relate to the claims brought in the

16   complaint.  *See Pac. Radiation Oncology, LLC v. Queen's Med. Ctr.*, 810 F.3d 631, 633 (9th Cir.

17   2015) ("When a plaintiff seeks injunctive relief based on claims not pled in the complaint, the

18   court does not have the authority to issue an injunction.").  Absent a nexus between the injury

19   claimed in the motion and the underlying complaint, the court lacks the authority to grant plaintiff

20   any relief.  *Id.* at 636.

21        **C. Procedural Deficiencies Under Local Rule 231 and Rule 65(b)**

22        Plaintiffs' application fails to comply with the procedural requirements governing ex parte

23   temporary restraining orders. Under Rule 65(b)(1), a court may issue a TRO without notice to the

24   adverse party only if: (1) "specific facts in an affidavit or a verified complaint clearly show that

25   immediate and irreparable injury, loss, or damage will result . . . before the adverse party can be

26   heard in opposition," and (2) "the movant's attorney certifies in writing any efforts made to give

27   notice and the reasons why it should not be required." Plaintiffs have not satisfied either of these

28   requirements.

Additionally, Local Rule 231(c) requires that a TRO motion be accompanied by, *inter alia*, "an affidavit detailing the notice or efforts to effect notice to the affected parties or counsel or showing good cause why notice should not be given." Plaintiffs' affidavits seemingly admit that they did not attempt to notify any Defendant, nor do they offer any reasonable explanation as to why notice should be excused. (*See* Doc. No. 4 at 15, 17). The absence of this showing is fatal to their request. *Tucker v. Fed. Nat. Mortg. Ass'n*, 2013 WL 5159730, at *1–2 (E.D. Cal. Sept. 12, 2013) (denying TRO where plaintiffs failed to provide notice or justify its absence under Rule 65(b) and Local Rule 231); *see also Genesoto v. Ryan Remington the Mortg. L. Firm*, 2019 WL 633465, at *1 (E.D. Cal. Feb. 14, 2019) (denying TRO where plaintiff failed to satisfy Local Rule 231 requirements).

Accordingly, the Court finds that Plaintiffs' failure to comply with Rule 65(b) and Local Rule 231 warrants denial of their Motion.

**D. Likelihood of Success on the Merits**

Putting aside the procedural deficiencies, the Motion nonetheless is without merit. Plaintiffs assert claims under the Fair Housing Act, the Civil RICO statute, and various state law theories, including retaliatory eviction. However, the record before the Court does not establish a likelihood of success on these claims sufficient to warrant emergency injunctive relief.

First, while Plaintiffs allege that the subject property lacks a Certificate of Occupancy and is therefore unlawfully rented, they have not cited binding authority establishing that such a deficiency alone renders the lease void or entitles them to immediate injunctive relief. *See Gruzen v. Henry*, 84 Cal. App. 3d 515, 519 (Ct. App. 1978) (recognizing that lack of occupancy certificate may support damages but does not necessarily preclude an eviction order).

Second, although Plaintiffs allege that the eviction was retaliatory and timed with the terminal illness of Plaintiff Valentine's ESA, they have not demonstrated that the eviction was initiated in response to protected activity or that Defendants lacked a legitimate, non-retaliatory basis for the notice. *See Wood v. City of Hayward*, 974 F.2d 1344 (9th Cir. 1992) (affirming denial of TRO where eviction followed lease termination and parallel state proceedings were pending, and where federal injunctive relief was barred under *Younger* abstention).

1   Third, Plaintiffs' RICO allegations, while extensive, rely heavily on conclusory assertions

2   of wire fraud and enterprise conduct. Courts have routinely denied TROs where claims are

3   speculative or unsupported by concrete evidence. *Salazar v. Moynihan*, 2011 WL 6179262, at *2

4   (E.D. Cal. Dec. 12, 2011) (denying TRO where plaintiff failed to demonstrate how alleged fraud

5   caused the eviction and failed to provide facts sufficient to support the claims or justify

6   emergency relief).

7   Accordingly, Plaintiffs have not shown a likelihood of success on the merits sufficient to

8   justify issuance of emergency injunctive relief.

9   **E. Irreparable Harm**

10   Plaintiffs argue that eviction would result in homelessness, health risks, and the loss of

11   housing stability for a disabled veteran.  (Doc. No. 4 at 6-7).  While the Court does not minimize

12   the seriousness of these concerns, Plaintiffs have not demonstrated that the alleged harm is

13   imminent or irreparable in the absence of a TRO.

14   The eviction notice was issued on April 23, 2025, and the TRO motion was filed on July

15   1, 2025—nearly ten weeks later.  Plaintiffs offer no explanation for this delay.  Under Local Rule

16   231(b), undue delay in seeking injunctive relief may contradict allegations of irreparable injury.

17   *See Sirrum v. Tomkinson*, 2013 WL 12121214, at *1–2 (E.D. Cal. May 21, 2013) (denying TRO

18   where plaintiffs delayed and failed to show urgency); *Salazar*, 2011 WL 6179262, at *1 (same).

19   Moreover, Plaintiffs have not shown that they lack alternative housing options or that the

20   alleged harms cannot be addressed through monetary damages or subsequent legal remedies. *See*

21   *Wendt v. Smith*, 2003 WL 21750676, at *3 (C.D. Cal. Jan. 30, 2003) (holding that eviction from

22   property to which plaintiffs had no legal title did not constitute irreparable harm); *see also*

23   *Tucker*, 2013 WL 5159730, at *1 (noting "federal courts lack jurisdiction to review the propriety

24   of state court rulings, including a Writ of Possession rendered during the course of a state court

25   unlawful detainer proceeding.").

26   **F. Balance of Equities and Public Interest**

27   While Plaintiffs face potential hardship, Defendants have a legitimate interest in enforcing

28   lease terms and recovering possession of the property.  Plaintiffs have not shown that Defendants'

8

conduct violates any court order or statutory prohibition. *See Salazar*, 2011 WL 6179262, at *2 (denying TRO where plaintiffs failed to show that defendants caused the alleged harm or that equities favored injunctive relief).

The public interest does not favor federal intervention in what appears to be a landlord-tenant dispute governed by state law and subject to ongoing or available state court remedies. *See Younger v. Harris*, 401 U.S. 37 (1971); *Newell v. Rolling Hills Apartments*, 134 F. Supp. 2d 1026, 1039 (N.D. Iowa 2001) (applying *Younger* abstention in eviction-related TRO request).

In summary, the undersigned finds that this case does not involve extraordinary circumstances warranting the issuance of a temporary restraining order and recommends, for all the reasons set forth above, that District Court deny Plaintiffs' Motion.

Accordingly, it is **ORDERED**:

1. The Clerk of the Court is directed to forward an Application to Proceed in District Court Without Prepaying Fees or Costs (Long Form) – AO 239 to Plaintiffs.

It further is **RECOMMENDED**:

1. Plaintiffs' motion for a temporary restraining order (Doc. No. 4) be DENIED.

2. Plaintiffs' applications for leave to proceed *in forma pauperis* (Doc. Nos. 2, 3) be DENIED without prejudice.

3. Plaintiffs be directed to either (1) pay the $405.00 filing fee for this action, or (2) complete and file the enclosed Application to Proceed in District Court Without Prepaying Fees or Costs (Long Form) – AO 239 within 21 days of the district court's consideration of these Findings and Recommendation.

4. Plaintiffs be warned that if they fail to comply with the district court's order that this action shall be dismissed for failure to pay the filing fee and failure to comply with a court order as a sanction under Local Rule 110 without further warning.

### NOTICE

These Findings and Recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). **Within 14 days of the date of service** of these Findings and Recommendations, Plaintiff may file written

objections with the Court. The document should be captioned, "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff's failure to file objections within the specified time may result in waiver of his rights on appeal. *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

Dated:   July 3, 2025

HELENA M. BARCH-KUCHTA
UNITED STATES MAGISTRATE JUDGE